J-S63045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  I.Z.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF D.D.W., MOTHER | No. 634 EDA 2016 |

Appeal from the Decree February 10, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s):    CP-51-AP-0000638-2015
CP-51-DP-0001743-2011
FID: 51-FN-0003534-2011

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 12, 2016**

D.D.W. ("Mother") appeals from the decree entered on February 10, 2016, granting the petition filed by the Philadelphia County Department of Human Services ("DHS"), seeking to involuntarily terminate her parental rights to her dependent, minor child, I.Z.P., a male born in January of 2010 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] In the order decree dated and entered on February 10, 2016, the trial court terminated the parental rights of Mother, only.  In a separate order entered on that same date, the trial court continued the termination hearing with regard to Child's father, J.P., ("Father"), who was not present at the hearing on February 10, 2016.  Also, on February 10, 2015, the trial court entered a permanency review order pursuant to the Juvenile Act, 42 Pa.C.S. § 6351, maintaining Child in the legal and physical custody of DHS, and placed in kinship foster care.

The trial court set forth the factual background and procedural history of this appeal as follows:

> I.P. was adjudicated dependent on September 28, 2011. On March 14, 2013 supervision of I.P. was terminated and he was returned to his mother, D.W.
>
> On December 13, 2013, DHS received a General Protective Services (GPS) [report] alleging that I.P. had a burn on his right hand. The incident occurred on December 11, 2013. The mother, D.W., originally treated the burn with Neosporin. Subsequently, the mother took the child to a pediatric visit. The child, I.P., was admitted to St. Christopher's [H]ospital for Children due to the burn becoming infected. Furthermore, it was alleged that the mother, D.W.[,] was diagnosed with anxiety, bipolar and depression. Lastly, it was alleged that D.W. was struggling with caring for the child as the child is non-verbal. The report was substantiated.
>
> On December 13, 2013, a DHS social worker visited the child at St. Christopher's [H]ospital. DHS discovered that I.P. had a very serious scalding burn. The hospital was concerned with D.W.'s ability to care for I.P. The child, I.P., indicated that the Mother, D.W.[,] inflicted the burn. I.P. was unable to indicate how because he was non-verbal.
>
> On December 23, 2013, I.P.'s maternal grandmother, (MGM)[,] contacted DHS by phone stating that D.W. left I.P. and his older sibling unsupervised on December 21, 2013 at 7:30 AM. The children contacted maternal aunt at 1 PM through social media indicating that they were unsupervised. Subsequently, the MGM picked the children up. The mother, D.W., did not contact MGM until 9:30 PM.
>
> On December 24, 2013, DHS visited the home of MGM. The child, I.P., indicated to DHS that he was happy with MGM and he did not want to see the mom. Furthermore, the MGM informed DHS that I.P. had unexplained bruises on his back.

On December 24, 2013, DHS obtained an Order of Protective Custody (OPC) for the [sic] I.P. The child remained in the care and custody of the MGM.

A shelter care hearing was held on December 27, 2013 before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of I.P. to the care and custody of DHS.

On January 8, 2014, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated I.P. dependent and committed him to the care and custody of DHS. Judge Irvine ordered a stay away order as to the mother on behalf of the child.

The matter was listed on a regular basis before judges of the Philadelphia Court of Common Pleas - Family Court Division - Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the DRO's reflect the [c]ourt's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On February 10, 2016, a Termination of Parental Rights hearing for the mother, D.W., was held in this matter. The [trial court] found by clear and convincing evidence that [M]other's parental rights of I.P. should be terminated pursuant to the Pennsylvania Juvenile Act [sic]. Furthermore, the [trial court] held that it was in the best interest of the child that the goal be changed to adoption.

Trial Ct. Op., 4/14/16, at 1-2 (unpaginated).

On February 10, 2016, the trial court entered the decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). On February 12, 2016, Mother timely filed a notice of appeal, along

with a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues:

Whether the trial court erred in involuntarily terminating . . . [M]other's parental rights where it was not supported by clear and convincing evidence when . . . [M]other completed a substantial portion of her [Family Service Plan ("FSP")] goals?

Whether the trial court erred in involuntarily terminating . . . [M]other's parental rights where . . . [M]other had consistently visited her child and there was a bond between . . . [M]other and Child[,] and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the child?

Mother's Brief at 5.[2]

In reviewing an appeal from an order terminating parental rights, we

adhere to the following standard:

[W]e repeat that appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are

---

[2] We note that Mother stated her issues in reverse order in her concise statement. In her notice of appeal, Mother challenged both the termination decree and the permanency review order entered on February 10, 2016. In her concise statement and statement of questions involved portion of her brief, however, Mother failed to challenge the permanency review order entered on February 10, 2016. She, therefore, waived any challenge to that order. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both the concise statement of errors complained of on appeal and the statement of questions involved portion of the appellate brief).

- 4 -

supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed in [*In re R.J.T.*, 9 A.3d 1179 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 5 -

*Id.* (citation omitted). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The instant trial court terminated Mother's parental rights under Sections 2511(a)(1), (2), (5), (8), and (b). Sections 2511(a)(1), (2), and (b), provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to

subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1)-(2), (b).

In her brief, Mother first contends that DHS did not meet its burden of proof with regard to Section 2511(a). Mother argues that she had substantially completed her FSP objectives, which included drug treatment, housing, parenting, and therapeutic visitation. Mother's Brief at 9. Mother claims that the only outstanding issues for her were visitation and housing. *Id.* at 10. Mother asserts that she had previously been reunified with Child, and that it was not until 2014—after the case was reopened—that therapeutic visits were ordered. *Id.* Mother testified that she wished to participate in therapeutic visits, but that DHS failed to make the appropriate arrangements for her to do so. Mother's Brief at 10 (citing N.T., 2/10/16, at 55-56). Mother testified that she loves Child and wishes to be reunified with him. *Id.* (citing N.T., 2/10/16, at 58-59). Mother cites *In re S.M.*, 816 A.2d 1117, 1123-24 (Pa. Super. 2003), in support of her argument that the trial court may not take the child of a parent who attempted to satisfy her FSP objectives and terminate that parent's parental rights. Mother's Brief at 10-11. Mother asserts that she participated in everything except visitation or made her best efforts to do so. *Id.* at 11.

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
>         \*     \*     \*
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

> [t]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (alterations in original and citation omitted); *see also In re C.L.G.*, 956 A.2d 999, 1006 (Pa. Super. 2008) (*en banc*).

Further, regarding the definition of "parental duties," this Court has stated as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Instantly, with regard to Section 2511(a)(1), the trial court found as follows:

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, [M]other failed to perform parental duties for the child. The court found by clear and convincing evidence that [M]other refused or failed to perform her parental duties.

In the instant case, . . . [M]other did not complete her single Case Plan (SCP) goals. The Community Umbrella Agency (CUA) social worker identified . . . [M]other's FSP objectives as: 1) to go to the Clinical Evaluation Unit of the [c]ourt and render three random drug screens, 2) complete drug and alcohol treatment, 3) complete mental health treatment and 4) attend supervised, therapeutic visits with the child. (N.T., 2-10-16, pgs. 31-35). [M]other did not attend the CEU for her random drug screens. (N.T., 2-10-16, p. 35). Furthermore, . . . [M]other did not complete drug and alcohol treatment. Moreover, she did not complete mental health treatment. (N.T., 2-10-16, p. 35). Lastly, . . . [M]other DID NOT visit with the child. (N.T., 2-10-16, p. 38)[.]

*    *    *

In the instant matter, the child, I.P., has been in placement for over two years. The testimony established that the child is in a loving home (N.T., 2-10-16, p. 41) and termination of . . . [M]other's parental rights is in the best interest of the child. (N.T., 2-10-16, p. 39).

Trial Ct. Op. at 3-4 (unpaginated).

Mother contends that DHS did not make reasonable efforts to avoid the termination of her parental rights by providing her with transportation to therapeutic visitations. Our Supreme Court, however, held that the trial court is not required to consider an agency's reasonable efforts in relation to a decision to terminate parental rights. *In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). Thus, her argument lacks merit. *See id.*

After a careful review of the record in this matter, we find the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re S.P.*, 47 A.3d at 826-27. We therefore affirm the termination of her parental rights with regard to Section 2511(a)(1).

Next, to satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In re M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). The grounds for termination of parental rights under Section 2511(a)(2) "are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted).

The instant trial court found the following with regard to Section 2511(a)(2):

> In the instant case, the CUA social worker testified that a stay away order was issued against the mother on behalf of the child, I.P. The [c]ourt ordered therapeutic visits between . . . [M]other and the child. (N.T., 2-10-16, pgs. 35-36). The supervised therapeutic visits were scheduled through Assessment & Treatment Alternatives, Inc. (ATA).

- 11 -

> . . . [M]other did not attend any of the therapeutic visits with the child. (N.T., 2-10-16, pgs. 36-37). Lastly, the social worker testified that . . . [M]other failed to respond to outreach she made to her regarding compliance with visitation. (N.T., 2-10-16, p. 40).

Trial Ct. Op. at 4 (unpaginated).

After a careful review of the record in this matter, we find the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *See In re S.P.*, 47 A.3d at 826-27. Again, as our Supreme Court held, the trial court is not required to consider reasonable efforts in relation to a decision to terminate parental rights. *See In re D.C.D.*, 105 A.3d at 675. Thus, Mother's argument concerning DHS's alleged failure to provide her with transportation to the therapeutic visits lacks merit. We, therefore, affirm the termination of Mother's parental rights with regard to Child under Section 2511(a)(2).

Next, we review the termination of the parental rights of Mother under Section 2511(b). This Court has stated that "the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." *In re C.L.G.*, 956 A.2d at 1008 (citation omitted). Our Supreme Court held

> if the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and

- 12 -

> stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Mother argues that the trial court erred in terminating her parental rights with regard to Child. Mother states that she did not fail to see Child until he went into placement in December of 2013, and the trial court ordered therapeutic visitation. Mother's Brief at 7, 12. Relying on ***In re S.M.***, Mother contends that there was no evidence admitted at the hearing to contradict her maintenance of a bond with Child. Mother states that she testified that after the court ordered therapeutic visitation, she made many attempts to contact her social worker to schedule therapeutic visits, but they never occurred. Mother asserts that DHS failed to satisfy its burden of proving that the termination of her parental rights was in Child's best interest when there continued to be a significant bond between Child and her. ***Id.*** at 15.

With regard to Section 2511(b), the trial court found as follows:

> In the instant matter, the CUA social worker testified that the child does not have a parental bond with . . . [M]other. (N.T., 2-10-16, p. 38). The child did not ever ask to visit with . . . [M]other. (N.T., 2-10-16, p. 39). The kinship parent, MGM, provides for all of the child's needs. The MGM provides the child with love, support and comfort. Furthermore, the MGM meets the medical, general, and academic needs of the child. (N.T., 2-10-16, p. 41)

- 13 -

> Moreover, the social worker testified that the child would not suffer irreparable harm if . . . [M]other's rights were terminated. (N.T., 2-10-16, pgs. 41-42). Lastly, the testimony indicated that it would be in the best interest of the child if . . . [M]other's parental rights were terminated and the child [could] be adopted. (N.T., 2-10-16, p. 39).
>
> The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa.C.S.A. § 2511(a) & (b) (N.T., 2-10-16, p. 65) and that it was in the best interest of the child to change the goal to adoption.
>
> Lastly, the [Trial] Court found that Mother, D.W., appeared to be under the influence of drugs/alcohol at the termination hearing. The [Trial] Court noted its observation that . . . [M]other's testimony was slurred and incoherent. (N.T., 2-10-16, p. 65).

Trial Ct. Op. at 5-6 (unpaginated).

After a careful review of the record, we find the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *See In re S.P.*, 47 A.3d at 826-27. It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re C.L.G.*, 956 A.2d at 1006 (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting" (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008)). Accordingly, having discerned no abuse of discretion, we affirm the termination of Mother's parental rights with regard to Child under Section 2511(b). *See In re S.P.*, 47 A.3d at 826-27.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016